Douglas T. Sloan, City Attorney (State Bar #194996)
Tina Griffin, Chief Assistant City Attorney (State Bar #210328)
**CITY OF FRESNO**
2600 Fresno Street, Room 2031
Fresno, California 93721-3602

Whitney, Thompson & Jeffcoach LLP
Mandy L. Jeffcoach, (State Bar #232313)
Jessica Thomason (State Bar #340704)
970 W. Alluvial Ave.
Fresno, California 93711
Telephone:    (559) 753-2550
Facsimile:    (559) 753-2560

BETTS & RUBIN, A Professional Corporation
907 Santa Fe Avenue, Suite 201
Fresno, California 93721
Telephone: (559) 438-8500
Facsimile:  (559) 438-6959
James B. Betts (State Bar #110222)
Joseph D. Rubin (State Bar #149920)

Attorneys for Defendant City of Fresno

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIREE MARTINEZ, FRESNO HOMELESS UNION, FAITH IN THE VALLEY, and ROBERT MCCLOSKEY,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF FRESNO,<br><br>Defendant. | Case No. 1:22-cv-00307-DAD-SAB<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE [F.R.C.P. Rule 8, 12(b)(6), 12(f) and 12(g)]<br><br>Date:         May 17, 2022<br>Time:         9:30 a.m.<br>Courtroom:  5 |

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     FRESNO MUNICIPAL CODE SECTION 10-616 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     EACH OF PLAINTIFFS' ASSERTED CLAIMS PRESENT A FACIAL
        CHALLENGE TO THE CITED STATUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.     Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.     State Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR STATE
        CREATED DANGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.     PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF
        FREEDOM OF SPEECH AND ASSEMBLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII.    PLAINTIFFS' COMPLAINT FAILS TO STATE OF CLAIM FOR VAGUENESS . . . 12

VIII.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RIGHT TO FREE
        MOVEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IX.     PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR PREEMPTION . . . . 16

X.      THIS COURT SHOULD STRIKE PLAINTIFFS' VOLUMINOUS IMPERTINENT
        AND IMMATERIAL FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.
    (9th Cir. 2007) 509 F.3d 1020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4

Am. Fin. Servs. Ass'n v. City of Oakland,
    (2005) 34 Cal.4th 1239 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6

Balisteri v. Pacifica Police Dept.,
    901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7

8

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

9

Besaro Mobile Home Park, LLC v. City of Fremont
    289 Fed.Appx. 232 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

10

11

Big Creek Lumber Co. v. County of Santa Cruz
    (2006) 38 Cal.4th 1139 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12

Bray v. Alexandria Woman's Health Clinic,
    506 U.S. 263 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13

14

Broadrick v. Oklahoma,
    413 U.S. 601 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15

Calfarm Ins. Co. v. Deukmejian
    (1989) 48 Cal.3d 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

16

17

City of Los Angeles v. Patel,
    576 U.S. 409 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18

Colgan v. Leatherman Tool Group, Inc.
    (2006) 135 Cal.App.4th 663 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19

20

Collins v. City of Harker Heights,
    503 U.S. 115 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21

Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,
    911 F.2d 242 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

22

23

Corales v. Bennett,
    567 F.3d 554 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

24

Cortina v. Goya Foods, Inc.,
    94 F. Supp. 3d 1174 (S.D. Cal. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

25

26

Dept. of Toxic Substances Control v. Alco Pac., Inc.,
    217 F.Supp.2d 1028 (C.D.Cal.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

27

28

ii

*Duncan v. Bonta,*
    19 F.4th 1087 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Evangelatos v. Superior Court*
    (1988) 44 Cal.3d 1188 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fantasy, Inc. v. Fogerty,*
    984 F.2d 1524 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Fiscal v. City and County of San Francisco*
    (2008) 158 Cal.App.4th 895 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ford Dealers Assn. v. Department of Motor Vehicles*
    (1982) 32 Cal.3d 347 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Foti v. City of Menlo Park*
    146 F.3d 629 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gonzales v. City of San Jose*
    (2004) 125 Cal.App.4th 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Great Western Shows v. County of Los Angeles*
    (2002) 27 Cal.4th 853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Guardianship of Ann S.*
    (2009) 45 Cal.4th 1110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Haggis v. City of Los Angeles*
    (2000) 22 Cal. 4th 490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re J.M.*
    (2019) 36 Cal.App.5th 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Jorge M.*
    (2000) 23 Cal.4th 866 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re M.S.*
    (1995) 10 Cal.4th 698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Marriage of Walton*
    (1972) 28 Cal.App.3d 108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Janklow v. Planned Parenthood,*
    517 U.S. 1174 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kathleen R. v. City of Livermore*
    (2001) 87 Cal.App.4th 684 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lanier v. City of Woodburn,*
    518 F.3d 1147 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lazy Y. Ranch LTD v. Behrens,*
    546 F.3d 580 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iii

*Martinez v. City of Clovis,*
    943 F.3d 1260 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nisei Farmers Leauge v. Labor and Workforce Development Agency*
    (2019) 30 Cal.App.5th 997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nunez by Nunez v. City of San Diego,*
    114 F.3d 935 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*O'Dea v. Bunnell*
    (2007) 151 Cal.App.4th 214 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People ex Rel. Gallo v. Acuna*
    (1997) 14 Cal.4th 1090 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Superior Court (Caswell)*
    (1998) 46 Cal.3d 381 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reno v. Flores,*
    507 U.S. 292 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Roulette v. City of Seattle,*
    97 F.3d 300 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Sabri v. United States,*
    541 U.S. 600 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schneider v. Amador County,*
    2013 U.S. Dist. LEXIS 32646 (E.D. Cal 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Schweitzer v. Westminister Investments, Inc.,*
    (2007) 157 Cal.App.4th 1195 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shen v. Albany Unified Sch. Dist.,*
    436 F. Supp.3d 1305 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sherwin-Williams Co. v. City of Los Angeles*
    (1993) 4 Cal.4th 893 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Societa Per Azioni De Navigazione Italia v. City of Los Angeles*
    (1982) 31 Cal. 3d 445 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Student Loan Marketing Ass'n v. Hanes,*
    181 F.R.D. 629 (S.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Suter v. City of Lafayette*
    (1997) 57 Cal.App.4th 1109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tobe v. City of Santa Ana*
    (1995) 9 Cal.4th 1069 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Today's Fresh Start, Inc. v. Los Angeles County Office of Education*
    (2013) 57 Cal.4th 197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Travis v. County of Santa Cruz*
    (2004) 33 Cal.4th 757 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

iv

United States v. Kaczynski,
  551 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Salerno,
  481 U.S. 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

United States v. Stevens,
  559 U.S. 460 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Williams,
  553 U.S. 285 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Wunsch,
  84 F.3d 1110 (9ᵗʰ Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Walker v. Superior Court
  (1988) 47 Cal.3d 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Washington State Grange v. Washington State Republican Party,
  552 U.S. 442 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Washington v. Glucksberg,
  521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Williams v. Garcetti,
  (1993) 5 Cal.4th 561 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Willis v. City of Seattle,
  943 F.3d 882 (9ᵗʰ Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Young v. Hawaii,
  992 F.3d 765 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Zinermon v. Burch,
  494 U.S. 113 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Zobel v. Williams,
  457 U.S. 55 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

STATUTES

Code of Civ. Procedure §338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed R. Civ. Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. Procedure 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. Procedure 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Government Code Section 820 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Government Code Section 820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Government Code Section 820.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# I.   **PRELIMINARY STATEMENT**

Plaintiffs' action presents a facial challenge to the City of Fresno's ("City") newly enacted amendment to Fresno Municipal Code ("FMC") Section 10-616. (Complaint, Ex A; RJN, Ex. 1) As referenced in the cited statute, FMC § 10-616 became effective, as amended, on March 31, 2022.

Plaintiffs offer no allegation that the contested provisions of the subject statute have ever been applied.  They have not.  Thus, each and every cause of action set forth in Plaintiffs' complaint presents a purely facial challenge.  As such, Plaintiffs' complaint does not seek the recovery of any damages.   Rather, Plaintiffs seek injunctive relief to preclude the City from conducting any abatements under FMC § 10-616 (irrespective of whether those abatements apply to Fire Code violations, blighted buildings or a homeless encampment) and for a declaration that the statute is unconstitutional under the United States and California Constitutions.[1]

FMC § 10-616, as amended, relates to the City's administrative abatement of a nuisance. This statute is part of FMC Chapter 10, Article 6 (Sections 10-601 et seq.), the Fresno Public Nuisance Abatement Ordinance. (RJN, Ex. 2)  Pursuant to the express terms of the statute, the amended provisions were adopted "[t]o protect the health and safety of the public and City employees while an abatement is in progress." (FMC Section 10-616(b)(1)).  In order to do so, the statute provides that "while an abatement is in progress, City employees or a retained contractor may designate a restricted area by erecting a barrier or cordon off an area of public or private property where an abatement is taking place."  However, in circumstances in which an abatement is taking place in an occupied location, "...persons providing services to the occupants or advocating on their behalf shall be permitted a reasonable time to make contact with the occupants and assist prior to the area being secured...". (FMC Section 10-616(b)(2))  Thereafter the statute provides that "[N]o person shall enter the restricted area without express authorization...", and provides that unauthorized entry into the restricted area may be punishable as either a misdemeanor or as an administrative citation.  However, prior to any person being cited, "... a verbal warning shall be provided to vacate the area with an opportunity to comply".  (FMC Section 10-616(b)(3)).

---

[1] Plaintiffs have set a motion for preliminary injunction for May 17, 2022

2

Plaintiffs' complaint and their recently filed motion for preliminary injunction make clear that Plaintiffs misinterpret the City's recent amendments to FMC § 10-616.[2]  Specifically, Plaintiffs assert that:

> "[c]utting off Plaintiffs from their unhoused community and cutting off unhoused people from their advocates and Union representatives with whom they wish to associate, will also likely lead to unsafe conditions by increasing the likelihood that life-sustaining items, such as tarps, tents, blankets, medicines, and mobility devices, will be destroyed."  (Complaint, ¶ ¶ 56, 61).

Plaintiffs' interpretation of the amended provisions is both speculative and incorrect.  The language of the statute plainly establishes that if City employees establish a restricted zone during an abatement, "[n]o person shall enter the restricted area ...". (FMC § 10-616 (b)(1)).  The term "[n]o person" is used in its literal sense, and means what it says.  In instances in which the City elects to establish a temporary "restricted area" [also aptly referred to by Plaintiffs as a "buffer zone" (See Plaintiffs' Points and Authorities in Support of Motion for Preliminary Injunction ["P's&A's"], p. 8:17)] all non-City employees are excluded.  This applies to Plaintiffs as well as all other non-City employees, including the homeless in instances of an abatement in or around a homeless encampment.

Thus, Plaintiffs' concerns that the amended statute will infringe upon their constitutional rights is predicated upon inaccurate conjecture of how the amended statute will be applied.  As discussed below, given the City's legitimate public safety concerns in enacting the amended statute, Plaintiffs' multiple facial challenges fail as a matter of law.

## II.   FRESNO MUNICIPAL CODE SECTION 10-616

FMC § 10-616 was originally adopted by the City in 1998, and has not been amended in over 20 years.[3]  Prior to the amendment at issue herein, this statute read as follows:

"SEC. 10-616 - ADMINISTRATIVE ABATEMENT

(a)     Abatement of the nuisance may in the discretion of the Director be performed by City forces or by a contractor retained pursuant to the provision of this Code.

---

[2] The City requests that this Court take judicial notice of Plaintiffs' recently filed motion for Preliminary injunction.

[3] The City requests that the Court take judicial notice of the text of FMC § 10-616 as it existed prior to the 3/31/2022 amendments at issue in this case. (RJN, Ex. 3)

3

(b)     The Director may enter upon private property to abate the nuisance pursuant to the provision of this article.  No person shall obstruct, impede or interfere with any officer, employee, contractor or authorized representative of the city whenever such person is engaged in the work of abatement, pursuant to the provisions of this article, or in performing any necessary act preliminary to or incidental to such work or authorized or directed pursuant to this article.

(c)     No officer, agent or employee of the city shall be personally liable for any damage incurred or alleged to be incurred as a result of any act required, permitted or authorized to be done or performed in the discharge of his duties pursuant to this article.

(d)     The Director may charge an hourly fee, as established in the Master Fee Schedule, for the enforcement of this ordinance.

(e)     Upon completion of the abatement, the costs of abatement may be collected under the provisions of Chapter 1, Article 5 of this Code.

(Added Ord. 97-77 § 2, eff. 1-29-98; Am. Ord. 98-65, § 3, eff. 10-1-98; AM. Ord. 98-79, § 2, 12-3-98; Am. Ord. 2001-40, §§ 8, 9, 5-28-01; AM. Ord. 2002-51, § 15, eff. 1-31-02)."

Prior to its amendment, § 10-616(b) precluded any person from obstructing, impeding or interfering with any officer, employee or contractor engaged in the "work of abatement".  Despite the wording of the statute, Plaintiffs never complained or suffered any adverse consequences relating to either the language or application of this statute over the last 20 years.

In its recently amended form, § 10-616(b) expressly seeks to protect the health and safety of the public and city employees while an abatement is in progress.  Plaintiffs readily concede that abatement procedures carry a substantial risk of harm:

•     The conditions at some of these [abatement] locations are both unsanitary and unsafe, presenting increased risk of violence, sexual assault, and health problems. (Complaint, § 15);

•     Plaintiff McCloskey has also repeatedly documented the City's use of heavy machinery to clear encampments while unhoused persons are still nearby the machinery.  (Complaint, § 22);

•     One unhoused person and Union member who recently experienced an abatement sweep describes the process as "hectic and traumatic," "like a tornado."(P's&A's, p.12:23-25);

•     Plaintiffs protect encampment residents when abatement crews disregard residents' physical safety and other ways - - for example, by using heavy machinery in close proximity to the residents who are packing up.  (P's&A's, p. 15:5-7);

•     During a sweep in February, 2022, an advocate saw the City park a dump truck inches away from an occupied tent. (P's&A's, p.15:8-9);

4

1    • So long as heavy machinery is nearby to unhoused persons, advocates, organizers and
2       reporters also need to be present to offer protection, assistance, and representations
        (P's&A's, p. 15:24-25); and

3    • City workers persist in moving heavy machinery in close proximity to unhoused
        people while they pack their belongings. (P's&A's, p. 19:7-8)

4        The City conducts abatement proceedings in a wide range of circumstances, only one of

5   which involves the clean-up of homeless encampments. Those include, among other things, the

6   abatement of blighted buildings, Fire Code violations, accumulations of rubbish, and abandoned

7   cars. (See FMC §§ 10-601 et seq.) The parties agree that certain abatement actions (here, of

8   homeless encampments) present a dynamic and potentially hazardous environment. The amended

9   provisions of Section 10-616 seek to address these safety risks by giving the City the discretion

10  under certain circumstances to implement a "buffer zone" during abatement proceedings to ensure

11  the safety of all involved. However, it is important to note that prior to exercising its authority to

12  create a buffer zone, Plaintiffs are expressly provided a reasonable time period to interact with

13  individuals present in an occupied location. Thereafter, even after a buffer zone is created, anyone

14  can request authorization to re-enter the area. Finally, in instances in which an individual errantly

15  or intentionally enters the buffer zone, no citation may be issued absent that individual's non-

16  compliance with a verbal warning to vacate the area. (FMC § 10-616(b)).

17  **III.   STANDARD OF REVIEW**

18       A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of

19  the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack

20  of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

21  theory." Balisteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In considering a

22  motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the

23  complaint, construes the pleading in the light most favorable to the party opposing the motion, and

24  resolves all doubts in the pleader's favor. Lazy Y. Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th

25  Cir. 2008).

26       To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a

27  claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

28  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

5

1  the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>,

2  556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but

3  it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. (quoting

4  <u>Twombly</u>, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

5  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

6  to relief.'" <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 557).

7          "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

8  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

9  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

10  action will not do." <u>Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare

11  assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' ... are not

12  entitled to be assumed true." <u>Iqbal</u>, supra, 556 U.S. at 681. A court should "dismiss any claim that,

13  even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required

14  elements of a cause of action." <u>Student Loan Marketing Ass'n v. Hanes</u>, 181 F.R.D. 629, 634 (S.D.

15  Cal. 1998). In practice, "a complaint ... must contain either direct or inferential allegations

16  respecting all the material elements necessary to sustain recovery under some viable legal theory."

17  <u>Twombly</u>, supra, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of

18  additional facts, the plaintiff should be afforded leave to amend. <u>Cook, Perkiss and Liehe, Inc. v.</u>

19  <u>Northern California Collection Serv. Inc.</u>, 911 F.2d 242, 247 (9th Cir. 1990).

20  **IV.    EACH OF PLAINTIFFS' ASSERTED CLAIMS PRESENT A FACIAL
       CHALLENGE TO THE CITED STATUTE**

21         **A.    <u>Federal Law</u>**

22         A constitutional challenge is facial if it attacks the statute itself as opposed to a particular

23  application. <u>City of Los Angeles v. Patel</u>, 576 U.S. 409, 415 (2015); <u>Willis v. City of Seattle</u>, 943

24  F.3d 882, 886 (9th Cir. 2019); <u>Young v. Hawaii</u>, 992 F.3d 765, 779 (9th Cir. 2021) (en banc) ["A

25  facial challenge is a claim that the legislature has violated the Constitution, while an as-applied

26  challenge is a claim directed at the execution of the law"]. Facial challenges are disfavored.

27  <u>Washington State Grange v. Washington State Republican Party</u>, 552 U.S. 442, 450 (2008). "A

28  facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully,

6

since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987); accord Young v. Hawaii, supra, 992 F.3d at 779 ["Because a facial challenge is directed to the legislature, the plaintiff must show that 'no set of circumstances exists under which the [statute] would be valid.'"]; see also Duncan v. Bonta, 19 F.4th 1087, 1101 (9th Cir. 2021) (en banc).

A generally applicable statute is not facially invalid unless the statute "can never be applied in a constitutional manner," United States v. Kaczynski, 551 F.3d 1120, 1125 (9th Cir. 2009) (quoting Lanier v. City of Woodburn, 518 F.3d 1147, 1150 (9th Cir. 2008)), or "lacks any 'plainly legitimate sweep.'" United States v. Stevens, 559 U.S. 460, 472 (2010) (quoting Washington v. Glucksberg, 521 U.S. 702, 740 n.7 (1997)). A court's review of a facial challenge is "limited to the text of the statute itself," and "Plaintiffs' ... individual circumstances do not factor into our analysis." Duncan v. Bonta, supra, 19 F.4th at 1101.

Facial challenges are disfavored because: (1) "[c]laims of facial invalidity often rest on speculation. As a consequence, they raise the risk of a premature interpretation of statutes on factually barebone records,"; (2) run contrary "to the fundamental principle of judicial restraint"; and (3) "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Washington State Grange v. Washington State Republican Party, supra, 552 U.S. at 450-51; Sabri v. United States, 541 U.S. 600, 609 (2004).

**B.    State Law**

In considering a facial constitutional challenge to the validity of a statute, California courts consider only the text of the measure itself, not its actual application to the particular facts and circumstances of an individual. Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1084. "In adjudicating such constitutional issues, our duty is clear: 'We do not consider or weigh the economic or social wisdom or general propriety of the [challenged statute]. Rather, our sole function is to evaluate [it] legally in the light of established constitutional standards.'" Calfarm Ins. Co. v. Deukmejian (1989) 48 Cal.3d 805, 814 "'[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.

1  Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably

2  appears.'" (Ibid.)  If the validity of the measure is "'fairly debatable,'" it must be sustained.  Id. at

3  p. 815.; Nisei Farmers Leauge v. Labor and Workforce Development Agency (2019) 30 Cal.App.5th

4  997, 1012.

5      "The standard for a facial constitutional challenge to a statute is exacting." Today's Fresh

6  Start, Inc. v. Los Angeles County Office of Education (2013) 57 Cal.4th 197, 218  Under "the

7  strictest requirement for establishing facial unconstitutionality," the challenger must demonstrate that

8  'the statute 'inevitably pose[s] a present total and fatal conflict with applicable constitutional

9  prohibitions.'" Guardianship of Ann S. (2009) 45 Cal.4th 1110, 1126.  All presumptions favor the

10  validity of a statute.  The court may not declare it invalid unless it is clearly so.  Tobe v. City of

11  Santa Ana, supra, 9 Cal.4th at 1102; Calfarm Ins. Co. v. Deukmejian (1989) 48 Cal.3d 805, 814-815.

12      Moreover, the Tobe Court ruled that "[w]hile the intent or purpose of the legislative body

13  must be considered in construing an ambiguous statute or ordinance, [citation omitted] the motive

14  of the legislative body is generally irrelevant to the validity of the statute or ordinance." [voluminous

15  case cites omitted].  Tobe v. City of Santa Ana, supra, 9 Cal.4th at 1093.  Thus, if an ordinance does

16  not on its face reflect a discriminatory purpose, and it is one which the City has the power to enact,

17  its validity must be sustained unless it can not be applied without trenching upon constitutionally

18  protected rights.  Id. at 1102.

19  **V.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR STATE CREATED DANGER**

20      Plaintiffs' first and second causes of action assert a claim for "state-created danger" under

21  the U.S. and California Constitutions, respectively.  Plaintiffs cite to the Fourteenth Amendment to

22  the U.S. Constitution, and to Article I, Section 7 of the California Constitution, which prohibit

23  deprivation of an individual's life, liberty or property without due process of law.  Plaintiffs'

24  allegations also make clear that these claims are premised upon their substantive due process rights.

25  (Complaint, ¶¶ 54, 59).  Specifically, Plaintiffs assert that the Ordinance gives the City the power

26  to completely cut-off public access to an area in which an abatement is occurring (Complaint ¶¶ 55,

27  60) and that cutting off Plaintiffs from their unhoused community will likely lead to unsafe

28  conditions.  (Complaint, ¶¶ 56, 61)

8

The Fourteenth Amendment bars "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment encompasses two types of protections: substantive rights (substantive due process) and procedural fairness (procedural due process). See Zinermon v. Burch, 494 U.S. 113, 125-28 (1990).

Under substantive due process jurisprudence, the Fourteenth Amendment "guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restrain." Washington v. Glucksberg, supra, 521 U.S. 702, 719 (1997). In this conception, due process encompasses certain "fundamental" rights. Reno v. Flores, 507 U.S. 292, 301-302 (1993). Substantive due process also "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty." Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009). The substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992).

Focusing on the text of FMC § 10-616, the statute envisions that the City may create a safe zone for code abatement proceedings which extend far beyond the cleanup of homeless shelters or encampments, and which would apply to any code enforcement actions to abate a nuisance, such as Fire Code enforcement actions or addressing the City's blighted, vacant buildings. These facts, standing alone, reflect that the statute is non discriminatory, as it applies to all persons and has a "plainly legitimate sweep". In addition, given the statutes application to a range of abatement actions unassociated with the homeless, the newly amended statute does not satisfy the "arbitrary or conscious shocking" test under substantive due process.

Further, a state generally has no duty to "protect individuals from third parties." Martinez v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019). However, there are two exceptions: (1) when a special relationship exists between the plaintiff and the state; or (2) when the state affirmatively places plaintiff in danger by acting with deliberate indifference to a known or obvious danger. Id.

To establish liability under the state-created danger doctrine, the plaintiff must show that: (1) the defendants' affirmative actions created or exposed plaintiff to an actual, particularized danger that s/he would not otherwise have faced; (2) the injury s/he suffered was foreseeable; and (3) the defendants' were deliberately indifferent to the known danger. Id.[4]

In the instant case, Plaintiffs' allegations that FMC § 10-616 exposes them to a particularized danger is speculative and unsupported. First, Plaintiffs have not alleged, and can not allege, that the City has ever acted upon these new provisions to create a buffer zone under Section 10-616 as part of an abatement. Second, Plaintiffs have not and can not point to language in the statute that would physically separate them from their clients. Specifically, Plaintiffs' allegation that the creation of a buffer zone will result in "[c]utting off Plaintiffs from their unhoused community" (Complaint, ¶¶ 56, 61) is simply inaccurate. To the contrary, a literal reading of the statute confirms that upon the creation of a restricted area in which an abatement is taking place, "no person" shall enter without express authorization. Thus, Plaintiffs' constitutional concerns are misplaced.

Moreover, contrary to Plaintiffs' allegations, the plain language of the statute actually assures access to the area in which an abatement takes place in an occupied area for "those persons providing services to the occupants or advocating on their behalf...". Thereafter, no unauthorized entry is allowed in the restricted zone of any individual whether they be a homeless individual, a service provider, or any other member of the public. Thus, the statute does not separate Plaintiffs from any occupant of an abatement zone, as there will be no one present within any buffer zone created under Section 10-616 except for City employees.

Second, for the same reasons, the amendments to Section 10-616 do not create the prospects of a foreseeable injury. Rather, as outlined above, the amendments seek to protect the safety of all involved individuals.

---

[4] California has not yet recognized a claim for state created danger under the California Constitution. Shen v. Albany Unified Sch. Dist., 436 F. Supp.3d 1305, 1315 (N.D. Cal. 2020). However, even if it did, California Courts have readily adopted the federal standard in analyzing such claims under federal law (See O'Dea v. Bunnell (2007) 151 Cal.App.4th 214, 223; Kathleen R. v. City of Livermore (2001) 87 Cal.App.4th 684, 699.) and would likely apply that same standard to state law claims.

1    Third, the proposed amendments do not reflect deliberate indifference to a known danger;

2    to the contrary, they reflect a measured approach to minimizing potentially dangerous conditions.

3    As such, Plaintiffs' first and second causes of action should be dismissed.

## VI.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF FREEDOM OF SPEECH AND ASSEMBLY

Plaintiffs attempt to state claims for relief under the U.S. and California Constitutions for violations of their rights to free speech and assembly. Specifically, Plaintiffs assert that FMC 10-616 impermissibly interferes with Plaintiffs' rights to speak to, or to assemble with, the occupants of an area subject to an abatement action. (Complaint, ¶¶ 67, 75)  Once again, Plaintiffs' interpretation of the statute is misplaced, as they speculate that it will be used to deny Plaintiffs the right to communicate or assemble with the occupants in the area of an abatement action. It simply will not.

The standard for measuring a law's overbreadth under the First Amendment is whether "a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'"  Washington State Grange v. Washington State Republican Party, supra, 552 U.S. 442, 449 n. 6 (2008).  Facial invalidation is "strong medicine that is not to be casually employed. "  United States v. Williams, 553 U.S. 285, 293 (2008) ("invalidating a law that in some of its applications is perfectly constitutional . . . has obvious harmful effects . . . . [This is why] we have vigorously enforced the requirement that the statute's overbreadth be substantial, not only in absolute sense, but also relative to the statute's plainly legitimate sweep.") Id. at 292.

The Supreme Court has further held that "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)[5]

In this case, Section 10-616 does not regulate speech in any way, shape or form.  It merely gives the City the authority to create what Plaintiffs themselves have described as a "buffer zone" during certain abatement proceedings.  As referenced above, the creation of a "buffer zone" is not intended to, nor will it, separate Plaintiffs from the abatement occupants, as once a restricted area

---

[5] California applies a similar standard.  See In re M.S. (1995) 10 Cal.4th 698, 710; In re J.M. (2019) 36 Cal.App.5th 668, 679-680.

is created, all individuals, other than City employees, are excluded.  (Section 10-616(b)(1)).

Moreover, in those circumstances when a restricted area is contemplated, the statute allows for Plaintiffs to have reasonable access to occupants in the abatement area prior to it being secured. (Section 10-616 (b)(2))  In addition, once the restricted area is established, an individual may request authorization to re-enter the buffer zone.  (Section 10-616(b)(1))

Thus, the language of the statute does not give rise to any, much less a "substantial number" of, unconstitutional applications.   Rather, the creation of a restricted zone to safely conduct abatement proceedings, including, but not limited to a homeless clean-up, falls within the discretion of the City to promote public health and safety, and is narrowly tailored to achieve that result, even in the abatement of homeless encampments.

As such, Plaintiffs' third and fourth causes of action should be dismissed.

## VII.   PLAINTIFFS' COMPLAINT FAILS TO STATE OF CLAIM FOR VAGUENESS

Plaintiffs' fifth and sixth causes of action attempt to state claims for relief under the U.S. and California Constitutions for void for vagueness.  Specifically, Plaintiffs assert that FMC Section 10-616 should be declared unconstitutional under substantive due process analysis because it fails to provide adequate notice of the conduct it proscribes and because it relies on ambiguous and undefined terms.  (Complaint, ¶¶ 81, 87).  Although predicated upon the Fourteenth Amendment, Plaintiffs also argue that a lesser standard applies because the newly impacted provisions implicate First Amendment rights.  (Complaint, ¶¶ 80, 86)

In the First Amendment context, facial vagueness challenges are appropriate if the statute "clearly implicates free speech rights".  Foti v. City of Menlo Park 146 F.3d 629, 639 n. 10 (9th Cir. 1998); United States v. Wunsch, 84 F.3d 1110, 1119 (9th Cir. 1996); see also Roulette v. City of Seattle, 97 F.3d 300, 305 (9th Cir. 1996). [facial attack proper if the challenged statute "is directed narrowly and specifically at expression or conduct commonly associated with expression"].

In Roulette, Plaintiffs argued that Seattle's ordinance, which prohibited people from sitting or laying on the sidewalk in certain circumstances, was facially unconstitutional under the Fourteenth Amendment's Due Process Clause.  In the view of the Roulette plaintiffs, the ordinance was nothing more than a thinly veiled attempt to drive unsightly homeless people from Seattle's commercial

areas.  The City countered that the ordinance was a legitimate response to substantial public

concerns.  The <u>Roulette</u> Court held that:

> "[w]e need not reach the merits of these contentions, given the posture of this case:
> Plaintiffs' substantive due process claim, like their First Amendment claim,
> challenges the statute on its face, not as applied.  The fact that [a legislative act]
> might operate unconstitutionally under some conceivable set of circumstances is
> insufficient to render it wholly invalid."  <u>United States v. Salerno</u>, 481 U.S. 739,
> 745...this has been described as "a long established principle of our jurisprudence."
> <u>Janklow v. Planned Parenthood</u>, 517 U.S. 1174.  Thus, the <u>Salerno</u> Court effectively
> rejected a facial Substantive Due Process challenge because "the statute at issue
> would be constitutional as applied in a large fraction of cases."  <u>Id</u>., citing <u>Salerno</u>,
> 481 U.S. at 749-50."

<u>Roulette v. City of Seattle</u>, supra, 97 F.3d at, 306; see also <u>Schneider v. Amador County</u>, 2013 U.S.

Dist. LEXIS 32646 (E.D. Cal 2013).

California state law is in accord.  To satisfy the constitutional command, a statute must meet

two basic requirements: (1) That statute must be sufficiently definite to provide adequate notice of

the conduct proscribed; and (2) the statute must provide sufficiently definite guidelines for the police

in order to prevent arbitrary and discriminatory enforcement.  <u>Tobe v. City of Santa Ana</u>, supra, 9

Cal.4th at 1107; <u>Williams v. Garcetti</u>, (1993) 5 Cal.4th 561, 567; <u>Walker v. Superior Court</u> (1988)

47 Cal.3d 112, 141; <u>People v. Superior Court</u> (Caswell) (1998) 46 Cal.3d 381, 389-390.  Only a

reasonable degree of certainty is required, however.  <u>Id</u>.  The analysis begins with "the strong

presumption that legislative enactments 'must be upheld unless their unconstitutionality clearly,

positively, and unmistakably appears. [Citations.].  A statute should be sufficiently certain so that

a person may know what is prohibited thereby and what may be done without violating its

provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can

be given to its language.'"  <u>Walker v. Superior Court</u>, <u>supra</u>, 47 Cal.3d at p.143.

At the same time, it is well established that the mere presence of some degree of ambiguity

or uncertainty in the wording of a statute does not make the statute void for vagueness.  "A statute

is not unconstitutionally vague merely because its meaning 'must be refined through application.'"

<u>Colgan v. Leatherman Tool Group, Inc.</u> (2006) 135 Cal.App.4th 663, 692, citing <u>Ford Dealers Assn.</u>

<u>v. Dept. of Motor Vehicles</u>, (1982) 32 Cal.3d 347, 367.  The fact that a statute contains "one or more

ambiguities requiring interpretation does not make the statute unconstitutionally void on its face."

<u>In re Jorge M.</u> (2000) 23 Cal.4th 866, 886   Generally speaking, unanswered questions about

13

particular problems of future application do not render a statute unconstitutional on its face; rather, when such situations arise in which the statutory language must be interpreted and applied, they can be "resolved by trial and appellate courts 'in time-honored, case-by-case fashion,' by reference to the language and purposes of the statutory schemes as a whole." Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1202

Furthermore, it is important to note that a statute will be deemed to have a reasonable degree of certainty and thereby overcome a vagueness challenge 'if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to [its legislative history or purposes]." People ex Rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 1117, quoting In re Marriage of Walton (1972) 28 Cal.App.3d 108.

> "When assessing a facial challenge to a statute on vagueness grounds, courts should where possible construe the statute in favor of its validity and give it a reasonable and practical construction in accordance with the probable intent of the Legislature; a statute will not be declared void for vagueness or uncertainty if any reasonable and practical construction can be given its language. [Citation.] The statute must nevertheless be sufficiently clear to give fair warning of the prohibited or required conduct, although a statute not sufficiently clear may be made more precise by judicial construction and application of the statute in conformity with the legislative objective. [Citation.]"

Schweitzer v. Westminster Investments, Inc., (2007) 157 Cal.App.4th 1195, 1206.

In the instant case, FMC § 10-616 is not directed at expression or conduct associated with expression. Rather, as set forth in the statute and as discussed above, the creation of a buffer zone during an abatement is designed to address health and safety concerns, which both Plaintiffs and the City acknowledge exist when dealing with a homeless encampment. Succinctly stated, Section 10-616 does not separate Plaintiffs from the occupants in any abatement. To the contrary, it ensures Plaintiffs access to such occupants before the creation of a buffer zone. Thereafter, no one, advocate or occupant, is allowed in the restricted area. Lastly, Section 10-616(b)(3) specifically provides that no individual may be cited for unauthorized entry into the restricted area without a verbal warning and an opportunity to comply. Thus, Plaintiffs' assertion that the statute is unconstitutionally vague fails and Plaintiffs' fifth and sixth causes of action should be dismissed.

**VIII. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RIGHT TO FREE MOVEMENT**

Plaintiffs' seventh and eighth causes of action attempt to state claims under the U.S. and California Constitutions for the infringement of their right to travel. Specifically Plaintiffs assert that because FMC Section 10-616 requires express authorization to enter into the buffer zone of an abatement occurring in a public place, it interferes with Plaintiffs' right to move freely. (Complaint, ¶¶ 93, 97).

First, it is apparent that the creation of a buffer zone associated with a City abatement involves public or private property exclusively in Fresno, California. However, neither the U.S. Supreme Court nor the Ninth Circuit have recognized a constitutional right to intrastate travel. Nunez by Nunez v. City of San Diego, 114 F.3d 935, 944 n. 7 (9th Cir. 1997); see also Bray v. Alexandria Woman's Health Clinic, 506 U.S. 263, 277 f.n. 7 (1993) (commenting in a section 1983 case involving private individuals protesting abortion that a purely intrastate restriction does not violate the right to interstate travel).

Second, even assuming that there is a federally enforceable right to intrastate travel, Section 10-616 does not remotely threaten any violation. Specifically, the purpose of the constitutional right to travel is to "protects interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from intrastate travelers." Bray v. Alexadria Woman's Health Clinic, supra, 506 U.S. 263, 277 (1993) (quoting Zobel v. Williams, 457 U.S. 55, 60 n. 6 (1982)). The regulation at issue only poses a temporary limit on anyone entering the buffer zone while an abatement is taking place. This safety protocol does not limit Plaintiffs' right to travel and does not discriminate against any protected class, as it applies equally to all members of the public.

Similarly, the exclusion of everyone other than City employees from an abatement does not violate state law. Specifically, the right of intrastate travel "has been recognized as a basic human right protected by Article I, Sections 7 and 24 of the California Constitution." Tobe v. City of Santa Ana, supra, 9 Cal.4th at, 1100. However, in Tobe, the California Supreme Court observed that: "Neither the United States Supreme Court nor this court has ever held, however, that the incidental impact on travel of a law having a purpose other than restriction of the right to travel, and which does

not discriminate among classes of persons by penalizing the exercise by some of the right to travel, is constitutionally impermissible." Id.

In the instant case, the language of Section 10-616 itself establishes that the intent of the statute is not to restrict travel, but to create a temporary restricted zone for City employees to conduct abatements which could otherwise create public health and safety concerns. Moreover, the statute does not distinguish between classes of people, but applies uniformly to all members of the public. As such, Plaintiffs' seventh and eighth causes of action should be dismissed.

## IX.   **PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR PREEMPTION**

FMC Section 10-616(c) provides that:

"No officer, agent [contractor] or employee of the city shall be personally liable for any damage incurred or alleged to be incurred as a result of any act required, permitted or authorized to be done or performed in the discharge of his duties pursuant to this article."

The phrase "this article" refers to FMC Chapter 10, Article 6, entitled the City of Fresno Public Abatement Ordinance. FMC Section 10-616(c) was not substantively altered by the recent amendment of this statute, except for the insertion of "contractors". It is worth noting that this provision is not newly enacted; rather, subdivision (c) has been in effect as part of Section 10-616 for over twenty years.

Plaintiffs challenge Section 10-616(c) on the basis that it is preempted by the California Government Tort Claims Act ("Government Claims Act"). Therefore, as raised herein with respect to Plaintiffs' other claims, again, Plaintiffs' challenge Section 10-616(c) on grounds that the ordinance is facially invalid due to conflict with state law. (Complaint, ¶100)

It is undisputed that Fresno is a Charter City. As a Charter City, the City of Fresno is empowered by the California Constitution to enact and enforce all local, police, sanitary, and other ordinances and regulations not in conflict with general laws. (Cal. Const., art. XI, §§ 5, 7.) Plaintiffs allege that an actual conflict exists between the Government Claims Act and  FMC Section 10-616(c) and cites to Societa Per Azioni De Navigazione Italia v. City of Los Angeles (1982) 31 Cal. 3d 445, in which case the City of Los Angeles attempted to exculpate itself from respondent liability, which the Court found to be in direct conflict with state law.

A Charter City ordinance conflicts with state law only if the ordinance duplicates, contradicts, or enters an area or field fully occupied by general law, either expressly or by legislative implication. Gonzales v. City of San Jose (2004) 125 Cal.App.4th 1127, 1134; Sherwin-Williams Co. v. City of Los Angeles (1993) 4 Cal.4th 893, 897. "Local legislation is 'duplicative' of general law when it is coextensive therewith and 'contradictory' to general law when it is inimical thereto. Local legislation enters an area 'fully occupied' by general law when the Legislature has expressly manifested its intent to fully occupy the area or when it has impliedly done so in light of recognized indicia of intent." Big Creek Lumber Co. v. County of Santa Cruz (2006) 38 Cal.4th 1139, 1150, as modified (Aug. 30, 2006) (citing Great Western Shows, Inc. v. County of Los Angeles (2002) 27 Cal.4th 853, 860–861.)

Plaintiffs claim that a conflict exists between municipal and state law because Section 10-616(c) violates the Government Claims Act prohibition against a public entity enacting an ordinance expanding statutory immunities. Plaintiffs appear to possibly claim that the Government Claims Act is preempted on grounds that the area is fully occupied by way of their cite to Am. Fin. Servs. Ass'n v. City of Oakland, (2005) 34 Cal.4th 1239 (P's&A's p. 31:17-20.)[6] Further, Plaintiffs argue that pursuant to Government Code Section 820(a), public employees are liable for their torts to the same extent as a private person. (P's&A's p. 31:5-6.) However, this argument ignores the preface to Section 820(a), which states "except as provided by statute…" Thus, Plaintiffs' statement of the law is inaccurate, as public employees are expressly exempted from personal liability for the exercise of discretionary acts (See Government Code Section 820.2) or the exercise of due care in the execution or enforcement of any law (See Government Code Section 820.4).

California Courts have found that in the absence of express preemptive language, a City or County may make additional regulations, different from those established by the State, if not inconsistent with the purpose of general law. Suter v. City of Lafayette (1997) 57 Cal.App.4th 1109, 1116; Fiscal v. City and County of San Francisco (2008) 158 Cal.App.4th 895, 915; See also

---

[6] Plaintiffs also cite to Haggis v. City of Los Angeles (2000) 22 Cal. 4th 490, 500 for that court's rejection of the notion that a local government cannot exempt itself from liability under the Government Claims Act by its own ordinance, but this argument is easily distinguished by the facts here.

Great Western Shows v. County of Los Angeles (2002) 27 Cal.4th 853, 866 ["Nor is there a direct conflict between the statute and the Ordinance.  The Ordinance does not mandate what state law expressly forbids, nor does it forbid what State Law expressly mandates."]

In the instant case FMC Section 10-616(c) is distinct from state law concerning employee liability because, among other things, it applies exclusively to the performance of acts "required, permitted or authorized" under the City's Public Nuisance Ordinance.  In this regard 10-616(c) addresses a purely municipal concern (i.e. abatement Public Nuisance Abatement Ordinance) and is distinct from, but does not conflict with state law.

FMC Section10-616(c) also does not contradict the Government Claims Act, as the provision incorporates the general principles outlined for employee liability under Government Code §§ 820.2 and 820.4.  Therefore, contrary to Plaintiffs contention, FMC §10-616(c) does not seek to jettison the Government Claims Act.  Instead, it expressly incorporates the rationale and general principals of the Act.  Therefore, FMC Section 10-616 has not expanded the statutory immunities, so as to be inimical to the Government Claims Act.  As such, Plaintiffs have not adequately stated a claim that FMC Section 10-616 is preempted by the Government Claims Act.

Additionally, given that FMC Section 10-616(c), has been in force and effect for decades, and the provisions of the Government Claims Act cited to by Plaintiffs since 1963, the allegations proffered with respect to Plaintiffs' preemption claim could have been alleged by Plaintiffs in 1998.  Thus, the facial challenge that Plaintiffs now lodge by way of their complaint accrued in 1998 and is therefore time barred.  Code of Civ. Proc. §338; See Travis v. County of Santa Cruz (2004) 33 Cal.4th 757, 762; Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd. (9th Cir. 2007) 509 F.3d 1020, 102 ["Given the general rule that 'the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury,' it stands to reason that any facial injury to any right should be apparent upon passage and enactment of a statute. [Citation.] [Plaintiffs], thus, should have known of its injury on the date of the ordinance's enactment."]; See also  Besaro Mobile Home Park, LLC v. City of Fremont 289 Fed.Appx. 232, 233 (9th Cir. 2008) [Facial challenge to one portion of the city's ordinance accrued, and statute of limitations began to run, when ordinance was enacted, where subsequent amendment was a continuation of aspect of

18

ordinance upon enactment, and thus did not create a new facial cause of action.] Thus, Plaintiffs' preemption claim is time barred.

## X.   THIS COURT SHOULD STRIKE PLAINTIFFS' VOLUMINOUS IMPERTINENT AND IMMATERIAL FACTUAL ALLEGATIONS

Prior to filing a responsive pleading, a party may move to strike any redundant, immaterial, impertinent or scandalous matter. Fed. R. Civ. P. 12(f). " 'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.... 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." Dept. of Toxic Substances Control v. Alco Pac., Inc., 217 F.Supp.2d 1028, 1032 (C.D.Cal.2002) (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd. on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).). Further, the Federal Rules of Civil Procedure require allegations in pleadings to be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1).

Here, the majority of Plaintiffs' allegations are immaterial and impertinent to a facial challenge. A review of the complaint makes clear that the allegations have no important relation to the claims for relief and are not necessary to the issues in question: a strictly facial challenge to FMC 10-616 as amended. Therefore, the bulk of the allegations included in the complaint are immaterial and impertinent to the challenge of FMC 10-616 presented by their pleading.

Further, the inclusion of the extensive background facts has the effect of causing significant prejudice to the City. Cortina v. Goya Foods, Inc., 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015). As aforementioned, Plaintiffs cannot introduce, and have not introduced, allegations that the statute has been applied, because it has not. Accordingly, given that the nature of Plaintiffs' challenge is facial, rather than as-applied, the pages upon pages of background information is not pertinent to the present challenge and the volume of the allegations are extraneous to the issues raised by Plaintiffs' complaint. Thus, the sole purpose that much of the factual information appears to serve is to lodge inflammatory statements prejudicial to the City and unrelated to the issues invoked by Plaintiffs facial challenge of the statute. Furthermore, the inclusion of extensive impertinent allegations is in disregard of Rule 8(d)(1) requiring that allegations be simple, concise, and direct.

Accordingly, the City requests that paragraphs 1-4 and 12-37 of Plaintiffs' complaint be stricken as the allegations have no important relationship to the claims for relief pled by Plaintiffs

and consists of statements that are not necessary to the issues in question, a facial challenge of FMC 10-616.

## XI.    CONCLUSION

By their complaint (and concurrently pending motion for preliminary injunction) Plaintiffs seek to litigate a broad range of factual disputes associated with the City's continuing efforts to address homeless issues.  However, the challenged statute is not limited in its application to the homeless, and applies to a broad range of abatement issues.  As outlined in detail above, Plaintiffs' asserted factual disputes are immaterial to Plaintiffs' numerous facial challenges to the constitutionality of FMC Section 10-616.  Rather, in ruling on the facial challenge to a statute, the court's review is limited to the text of the statute itself and individual circumstances, or the legislators' motives, do not factor into the analysis.

In this case, Plaintiffs' challenges to FMC Section 10-616, as amended, must fail as the cited provisions are not discriminatory, and may be validly applied in myriad circumstances involving, at the very least, code abatement proceedings involving Fire Code violations, vacant blighted buildings, accumulations of rubbish and abandoned vehicles.  Moreover, Section 10-616 does not directly seek to limit speech, expressive conduct, assembly or the right to travel.  Finally, under substantive due process analysis, the provisions of the Section 10-616 are neither arbitrary nor conscious shocking.

As a result, Plaintiffs' complaint should be dismissed with prejudice.


Dated:  April, 8, 2022                          BETTS & RUBIN


                                               By   /s/ James B. Betts
                                               James B. Betts
                                               Attorneys for Defendant City of Fresno

20

## PROOF OF SERVICE

I am a citizen of the United States of America, a resident of Fresno County, California, over the age of 18 years and not a party to the within-entitled cause or matter.  My business address is 907 Santa Fe Avenue, Suite. 201, Fresno, CA.  On April 8, 2022, I served **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE [F.R.C.P. Rule 8, 12(b)(6), 12(f) and 12(g)]** on the parties in this action by placing an original/a true copy in an envelope and delivering it as follows:

\_\_\_\_\_   **(By Overnight Courier)** I caused such envelope with postage fully prepaid, to be sent by _____.

\_\_\_\_\_   **(By Mail)** I deposited the envelope, with postage fully prepaid, with the United States Postal Service at Fresno, Fresno County, California.

\_\_X\_\_   **(By Mail)** I placed the envelope for collection and processing for mailing following this business' ordinary practice with which I am readily familiar.  On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

\_\_X\_\_   **(By E-Mail)** I caused each document to be sent by e-mail.

\_\_\_\_\_   **(By Hand)** I caused each envelope to be delivered by hand.

Each envelope was addressed as follows:

Chessie Thacher
Hannah Kieschnick
Angelica Salceda
Shilpi Agarwal
American Civil Liberties Union Foundation
of Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111

Anthony Prince
Law Offices of Anthony D. Prince
General Counsel, California Homeless Union
2425 Prince Street, Suite 100
Berkeley, CA 94705

Douglas T. Sloan,
Tina Griffin,
**CITY OF FRESNO**
2600 Fresno Street, Room 2031
Fresno, California 93721-3602

Whitney, Thompson & Jeffcoach LLP
Mandy L. Jeffcoach,
Jessica Thomason
970 W. Alluvial Ave.
Fresno, California 93711

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on April 8, 2022, at Fresno, California.

\_\_/s/ Adriana Garcia_____
Adriana Garcia

21